**Don H. WALTON, Appellant,**

v.

**Mary Katherine WALTON, Appellee.**

No. 8902.

Court of Civil Appeals of Texas, Amarillo.

May 22, 1978.

Kolander & Hamilton, J. M. Kolander, Amarillo, for appellant.

William H. Mann, III, Amarillo, for appellee.

DODSON, Justice.

This is an appeal of an order of the trial court increasing monthly child support for

one child. Don H. Walton, appellant, and Mary Katherine Walton, appellee, were divorced in the Court of Domestic Relations of Potter County, Texas, on July 17, 1974. As a part of the divorce judgment, Mr. Walton was ordered to pay the sum of $75 per month for the support of the couple's minor male child. Mrs. Walton filed a motion requesting the court to increase the amount of child support. Mr. Walton duly answered. After a hearing, the court entered its order directing Mr. Walton to pay the sum of $160 per month in semi-monthly installments of $80 each for the support of his child. From this order, Mr. Walton appeals to this court. We affirm.

■ On appeal, Mr. Walton claims that the trial court erred by applying a formula in arriving at its judgment, rather than considering the evidence and using its discretion. We do not agree.

The undisputed testimony shows that at the time of the divorce Mr. Walton was earning less than $400 per month while attending college and working as an insurance salesman. When he began employment with the insurance company, his monthly salary was $600 for three months. However, after the three month period with the insurance company, his income dropped to approximately $200 per month. He also was receiving GI benefits at the rate of $187 per month.

At the time of the hearing on the motion to increase the child support payments, he was employed by Santa Fe Railroad Company and earning net pay of $1,346 per month. He testified that his monthly expenses were $1,340 per month. Also, the evidence showed that he had remarried and that his present wife is expecting a child.

At the time of the hearing Mary Katherine Walton was gainfully employed at the Santa Fe Railroad, earning a net monthly salary of approximately $796.61. She also received $55 per month child support for a child by a previous marriage and had received an income tax refund of $1,200 in the prior year. These amounts were in addition to the $75 a month child support payment made by Mr. Walton. She testified to fixed monthly expenses of approximately $1,199.50.

After hearing all of this evidence, the trial judge commented that both parties were lucky to have good jobs but that "I know that right now, temporarily, until you can recover from some of the debts each of you have built up, your finances are in the hole." The judge found "there has been a change in the circumstances since the decree and I will order that child support to be increased to $160.00 per month and . . I don't have any objection to . . . splitting that into two payments a month."

At this point Mr. Walton's attorney said "$160.00, Judge?" To this question the court replied "Yes." Then, Mr. Walton's attorney said, "It will help, I don't know if he can do that." This exchange was followed by a comment by the judge: "The— that amount is consistent with the schedule we use as a guideline and that schedule, I think, in many instances is a very minimal figure and especially in keeping with what the incomes are. If you desire me to, I will divide that into two equal payments on the first and fifteenth. Do you get paid on the first and fifteenth?" To this question Mr. Walton replied "Yes."

Mr. Walton's attorney, in support of his motion for new trial, stated "I think the court was guided more than it should have been by the schedule . . . ." The court responded:

. . . for your own knowledge, I use the schedule for reference. . . . I received the copy of the schedule through the Family Law Section of the State Bar. . . . My own personal feeling is that probably the support is low and the chart is helpful to me to keep me from having to multiply out the figures each time to determine what a man's monthly salary is if he only gives me a weekly salary . . it appears if I had actually followed the chart to the letter I would have awarded a minimum of $20.00 more support. . . In having taken into consideration in making that decision the income of the Movant for the motion to increase and

her circumstances and also the circumstances of indebtedness, I did set that amount at lower than what the chart would have reflected. I, also, in most cases I hear—or at least half of them, the people have more debts than they can really service properly and to set a man's child support based on what he feels he has left over, ends up awarding [*sic*] the spendthrift and not adequately providing for the care of the children.

In support of his position, Mr. Walton relies on *Barlow v. Barlow*, 282 S.W.2d 429 (Tex.Civ.App.—El Paso 1955, no writ). In *Barlow*, the court reversed a child support order because the trial court had a declared formula (one-fourth of net salary) to determine the amount of child support payments which it employed in each case, without regard for or consideration of any other evidence.

In the case before us the record reveals that the trial court explicitly stated that he only made reference to the so-called schedule to aid him in calculating a party's monthly salary when the testimony revealed a weekly rate. He expressed his disagreement with the suggested guidelines in the chart concerning support payments. He commented that the chart figures were probably low. He observed, in retrospect, that had he applied the suggested guidelines in the schedule to the evidence in this case, the support payment would have been $180 per month rather than the $160 he ordered. We must point out that there is no evidence in the record that the trial court had a pre-determined policy of following the guidelines suggested in the schedule in determining the amount of child support in this or any other case. Thus, we do not consider *Barlow* controlling in the case before us.

■ The court should strive to give fair and equal treatment to all of the various parties similarly situated which daily appear before it. This effort best serves the ends of justice. And likewise, we do not condemn the trial court for comparing its decision with a schedule or suggested guidelines for similar cases. This is particularly true when, as here, the trial court explicitly disagreed with the suggested guidelines and the record is absent of any evidence that the trial court followed the schedule.

■ Mr. Walton maintained that child support payments should not be increased because his monthly expenses exceeded his net monthly take-home pay and because Mrs. Walton was gainfully employed and could do a better job of managing her own finances.

In support of this contention Mr. Walton directs us to *Gully v. Gully*, 111 Tex. 233, 231 S.W. 97, 100 (1921), where the Court stated: "In determining the duty of the husband to supply necessaries to his children, before or after divorce, it is to be borne in mind that his duty corresponds to his financial ability, having due regard to all his lawful obligations, which may include those assumed to another wife and to other children . . . ." However, this rule was never intended to preclude a debt-burdened father from paying a reasonable amount of child support. Any economic change brought about by Mr. Walton's remarriage must not militate against his dependent child. *Beaird v. Beaird*, 380 S.W.2d 730 (Tex.Civ.App.—Dallas 1964, no writ).

By necessity, the trial court must have wide discretion in determining questions of child support payments. *Dennis v. Dennis*, 512 S.W.2d 699, 701 (Tex.Civ.App.—Tyler 1974, no writ). Each case must stand on its own facts. The amount of child support depends upon the *ability* of the father and the needs of the children, bearing in mind their station in life. *Brooks v. Brooks*, 480 S.W.2d 463 (Tex.Civ.App.—Eastland 1972, no writ). However, the court's child support order must serve the best interest of the children. *Dennis v. Dennis, supra.*

Under the circumstances of this case, we conclude that the trial court did not abuse its discretion and committed no reversible error by its actions in the matter complained of. Mr. Walton's point of error is overruled and the judgment of the trial court is affirmed.